IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SAMUEL BURNINGHAM,<br><br>    Plaintiff,<br><br><br>    vs.<br><br><br>TVI, INC., DBA SAVERS,<br>    Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 2:17-cv-00363-TC<br><br><br>Judge Tena Campbell |

Within a three-month period, Samuel Burningham filed 149 lawsuits in this district, all alleging violations of the Americans with Disabilities Act (ADA) by local businesses. This order involves one of those lawsuits.

Nearly identical to Mr. Burningham's other suits, he alleges here that TVI, Inc., DBA Savers (Savers), violates the ADA by (1) providing accessible-parking signs that stand a few inches short of the ADA requirement and (2) failing to insulate the pipes under its sink. Because Savers has now insulated the piping under its sinks, and because Mr. Burningham fails to allege that Savers owns,

leases, or operates the parking lot in which the alleged nonconforming sign stands, the court dismisses Mr. Burningham's suit.[1]  And though the court finds the alleged behavior of Mr. Burningham and his counsel disturbing, because the court has determined that the case should be dismissed, further investigation into the allegations at this time would waste judicial resources.  Consequently, the court declines to impose sanctions.

## BACKGROUND

Mr. Burningham has a disability that requires the use of a wheelchair. Savers owns and operates several thrift stores, including one in Orem, Utah (the Orem Store).  Mr. Burningham has shopped at the Orem Store and intends to return in the future.  Mr. Burningham also intends to visit the Orem Store in the future to "verify compliance . . . with the ADA."  (Compl. ¶ 14, ECF No. 2.)

In visiting the Orem Store, Mr. Burningham encountered "barriers to access" that deter him from further shopping there and monitoring its compliance. (Id.)  As a result, Mr. Burningham filed this lawsuit, alleging that Savers continues to violate the ADA by failing (1) "to provide accessible parking space

---

[1] Savers also contends that Mr. Burningham lacks standing.  Because the court dismisses Mr. Buriningham's complaint on other grounds, it need not consider Savers's standing argument.

identification signs 60 inches . . . above the . . . ground surface" and (2) "to insulate . . . [its] water supply and drain pipes under sinks to protect against contact." (Id. ¶ 34.) Mr. Burningham seeks an injunction requiring Savers to fix its violations.

After receiving the complaint, Savers's District Manager, Joseph VanDam, travelled to the Orem Store to investigate the violations. While there, he "discovered that the restroom sinks indeed had no protective insulation around the pipes under the sinks." (Decl. of Joseph C. VanDam ¶ 4, ECF No. 5-9, attached to Mot. to Dismiss.) Mr. VanDam immediately installed insulation and submitted photos as proof. He also instructed the Orem Store employees to "be certain that the under-sink insulation remains intact, in place and in good repair." (Id. ¶ 8.)

Mr. VanDam then examined the accessible-parking signs in front of the Orem Store. On inspecting them he "discovered that they were actually over 60 inches from the ground." (Id. ¶ 5.) After comparing a photo of the alleged noncompliant sign that Mr. Burningham had provided to Savers, Mr. VanDam concluded that the alleged noncompliant sign was not any "of the signs that were actually in front of the store." (Id. ¶ 6.)

Mr. VanDam testified that Savers leases the building for the Orem Store, which is located in a shopping center with a large parking lot that serves multiple storefronts. Under the lease, the landlord of the shopping center maintains "exclusive control and management of . . . the Common Areas," including the parking lot. (Shop Lease Provisions 13, attached as Ex. 3 to Decl. of Joseph C. VanDam.)

After insulating the under-sink piping, confirming that the accessible-parking signs in front of its store complied with the ADA's regulations, gathering evidence that Savers is not the owner, operator, or lessor of the parking lot, Savers moved to dismiss Mr. Burningham's suit.

## DISCUSSION

### I. The Court Will Consider Mr. VanDam's Declaration and Its Attachments to Resolve the Piping Claim, but not to Resolve the Accessible-Parking Claim.

As an initial matter, Mr. Burningham argues that the court "is required to convert [the] Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion" because the "jurisdictional question is intertwined with the merits of the case." (Resp. to Def.'s Mot. to Dismiss 7, ECF No. 11.) Savers disagrees.

In a typical motion to dismiss, a motion under Rule 12(b)(6), the court accepts "as true all well-pleaded facts, as distinguished from conclusory allegations, and view[s] those facts in the light most favorable to the nonmoving party." Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005) (citation and internal quotations marks omitted). But when a defendant moves for dismissal under Rule 12(b)(1)—asserting that the court lacks subject-matter jurisdiction— the court can "go beyond allegations contained in the complaint" by looking at "affidavits [and] other documents." Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).

Federal courts do not presume jurisdiction. Rather, the party asserting federal jurisdiction bears the burden of proof. Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999).

"Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." Holt, 46 F.3d at 1002. For a facial attack, the court must accept the allegations in the complaint as true. Id.

For the second type of Rule 12(b)(1) motion—a "factual attack"—"a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." Id. at 1003.  For factual attacks a "district court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."  But when the jurisdictional questions "are intertwined with the merits of" the case, a court is required to convert a 12(b)(1) motion to dismiss into a Rule 56 motion.  And "[t]he jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." Id.

Here, Savers attached the Declaration of Mr. VanDam to its motion to dismiss.  The declaration states that (1) Savers has insulated the pipes under its sink, (2) the alleged noncompliant signs are not located in front of the Orem Store, (3) Savers has no control or authority over the parking lot in front of the Orem Store, and (4) the signs in the parking lot in front of the Orem Store in fact comply with the ADA's regulations.  Mr. Burningham does not object to the court's consideration of Mr. VanDam's declaration or its attachments in general.  Rather, Mr. Burningham seems to object only to the court's consideration of these

materials in a Rule 12(b)(1) motion because, according to Mr. Burningham, they are intertwined with the merits.

To some extent, both parties miss the mark. To the extent Savers seeks to introduce this evidence to attack subject-matter jurisdiction, the court will consider it. But to the extent Savers seeks to use this evidence to argue that Savers's claims fail on the merits, the court will not.

The court will consider Mr. VanDam's declaration and its exhibits as they relate to Savers's mooting of the under-sink piping issue. When a claim is moot, the court no longer has subject-matter jurisdiction over the claim. Consequently, a motion to dismiss a claim as moot falls within Rule 12(b)(1)'s scope. In this context, the court may consider evidence as long as it does not intertwine with the merits of the case. Id. And Savers's factual attack on the court's subject-matter jurisdiction over the piping claim does not. Savers does not argue that the allegations in Mr. Burningham's complaint are untrue. Rather, Savers argues that an ongoing controversy no longer exists because it has now insulated the piping. The resolution of this assertion is not "dependent on the same statute which provides the substantive claim in the case." Id.; see also Shelton v. Café Rio, Inc., No. 1:17-CV-00070, 2017 WL 4402425, at *2 (D. Utah Oct. 2, 2017)

(dismissing an ADA complaint under Rule 12(b)(1) as moot because the defendant had remediated the violation).

But Savers's motion to dismiss the accessible-parking claim does not fall within the scope of Rule 12(b)(1) at all. Savers does not seek to introduce evidence to attack the court's subject-matter jurisdiction. Rather, Savers seeks to introduce evidence that (1) the alleged noncompliant sign is not located in the parking lot in front of the Orem Store, (2) that it has no control over the parking lot at the Orem Store, and (3) that the signs in the parking lot in front of its store in fact comply with the ADA's 60-inch-height requirement. With this evidence, Savers argues that Mr. Burningham's accessible-parking claim fails on the merits. Though Savers's evidence would be considered on a motion for summary judgment, the court declines to consider the evidence at this time. See Dobson v. Anderson, 319 F. App'x 698, 702 (10th Cir. 2008) ("[W]hen parties submit materials outside of the pleadings in support of or in opposition to a Rule 12(b)(6) motion, a court has broad discretion whether to accept and consider them.")

## II. Mr. Burningham's Piping Claim Is Moot.

Savers argues that by adding insulation on the piping under its sinks it has mooted Mr. Burningham's claim. Mr. Burningham responds that its claim is not

moot because Savers could "easily return to its old ways by" removing the insulation. (Resp. to Def.'s Mot. to Dismiss 9.)

As the Tenth Circuit has recognized, mootness is a threshold issue "because the existence of a live case or controversy is a constitutional prerequisite" to federal-court jurisdiction. Beattie v. United States, 949 F.2d 1092, 1093 (10th Cir. 1991).

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (alteration in original) (citation and internal quotation marks omitted). "Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Foster v. Carson, 347 F.3d 742, 745 (9th Cir. 2003) (citation and internal quotation marks omitted). The court lacks subject-matter jurisdiction over a moot claim. Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1109 (10th Cir. 2010).

Mr. Burningham brings this lawsuit under Title III of the ADA. A Title III plaintiff's sole remedy is injunctive relief. Chambers v. Melmed, 141 F. App'x

718, 720 (10th Cir. 2005) (citing 42 U.S.C. § 12188(a)).  "When a party seeks only equitable relief, . . . past exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effects."  McClendon v. City of Albuquerque, 100 F.3d 863, 867 (10th Cir. 1996). Under Title III of the ADA, when a defendant fixes the alleged noncompliant feature, the case becomes moot.  Shelton, 2017 WL 4402425, at *3.  But the Defendant must show that "the allegedly wrongful behavior could not reasonably be expected to recur."  Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (citation and internal quotation marks omitted).

Here, Savers has submitted evidence that it added the ADA-compliant insulation to its under-sink piping.  Mr. Burningham does not dispute this. Instead, Mr. Burningham argues that the claim is not moot because Savers could easily remove the insulation.  But a defendant's ability to undo its remediation does not create a live case.  Rather, the question is whether the allegedly wrongful behavior "could not reasonably be expected to recur."  Id. (citation and internal quotation marks omitted) (emphasis added).  Savers would not benefit in any way from removing its insulation.  And it cannot reasonably be expected that Savers would, in a moment of irrational spite against people with disabilities, remove the

ADA-complaint insulation from its pipes.  Consequently, by insulating its under-sink piping, Savers has mooted Mr. Burningham's claim.

### III.  Mr. Burningham's Accessible-Parking Claim Fails as a Matter of Law.

Savers argues that the court should dismiss Mr. Burningham's accessible-parking claim because Mr. Burningham has failed to allege that Savers owns, leases, or operates the parking lot in which the signs are located.[2]

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  To meet this standard, the complaint must contain enough factual allegations, which taken as true, "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In the context of the ADA, Title III imposes compliance obligations only on a party "who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  As used in the ADA, "operate" means to "put or keep in operation, to control or direct the functioning of, or to conduct

---

[2] Savers goes a step further and submits evidence that Mr. Burningham's accessible-parking claim fails on the merits.  As already discussed, the court declines to consider that evidence at this time.

the affairs; manage" the relevant area. See Lentini v. Cal. Ctr. For the Arts, Escondido, 370 F.3d 837, 849 (9th Cir. 2007) (citation and internal quotation marks omitted). Accordingly, a business located in a shopping center that neither owns, leases, or operates the parking lot servicing the shopping center cannot be liable for defects in that parking lot. See Kohler v. Bed Bath & Beyond of Cal., LLC, 780 F.3d 1260, 1264 (9th Cir. 2015) (rejecting a plaintiff's interpretation of Title III that would "impose upon a single tenant—e.g., the cell phone kiosk operating in a shopping center's lobby—liability for ADA violations occurring at the far end of the shopping center's parking lot").

Here, Mr. Burningham alleges that the accessible-parking signs in the parking lot servicing the Orem Store stand below the 60-inch height requirement. But Mr. Burningham fails to allege that Savers owns, leases, or operates the parking lot. Given this fatal omission, Mr. Burningham's accessible-parking claim fails to contain enough factual allegations to state a claim to relief that is plausible on its face. Twombly, 550 U.S. 570.

## IV. The Court Denies Savers's Motion for Sanctions.

Savers asks the court to impose sanctions on Mr. Burningham and Litigation Management Financial Services—the party, according to Savers, that

12

drives the legion of ADA cases in this district—for acting recklessly and in bad faith.  Mr. Burningham responds that his legally proper complaint warrants no sanctions.[3]

Federal statutory law provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  This is an "extreme standard," and fees should be awarded "only in instances evidencing a serious and standard disregard for the orderly process of justice."  Baca v. Berry, 806 F.3d 1262, 1268 (10th Cir. 2015) (citations and internal quotation marks omitted).

A court may also sanction a party using its "inherent power."  Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991).  In determining whether an inherent-power sanction is appropriate, courts may consider "inconvenience and the waste of judicial resources" caused by the plaintiff.  Mellott v. MSN Commc'ns, Inc., 492

---

[3] Mr. Burningham also argues that Savers's request for sanctions is an improper attempt to circumvent Rule 11's requirements.  Additionally, Mr. Burningham contends that the court should strike a number of exhibits.  Because the court declines to impose sanctions, the court does not address these arguments.

F. App'x 887, 889 (10th Cir. 2012).  A "primary aspect" of the court's discretion in exercising inherent powers "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."  <u>Chambers</u>, 501 U.S. at 44–45.

Here, Mr. Burningham has filed 149 cases in this district, all alleging violations of the ADA's regulations by local businesses.  The text of Mr. Burningham's complaint in this case is virtually identical to his other complaints.  In fact, Mr. Burningham's complaints are virtually identical to over 100 complaints filed by two other plaintiffs, Trevor Kelly and Tammy Shelton.  The primary difference between these complaints is the names of the plaintiffs, the addresses of the defendants, and a change in the dates in which the plaintiff visited the defendants' properties.

Savers alleges—and provides substantial evidence in support—that Mr. Burningham and his counsel have engaged in disturbing behavior that, if proven, could warrant the imposition of sanctions.  For example, Savers alleges that "the real party in interest in this case is actually an Arizona based company, Litigation Management Financial Services, LLC" (LMFS).  (Mot. to Dismiss 2–3.) According to Savers,

> LMFS operates by seeking out disabled individuals to act as potential plaintiffs to whom they pay $50 for each filed case, and

> attorneys, to whom they pay a fee of $100 for each case, essentially for the use of the attorneys' ECF password. LMFS then handles all aspects of litigation and settlement negotiations, and retains all settlement proceeds.

(Id. at 3.)  Savers alleges that LMFS's scheme is designed, not to help people with disabilities, but as "a scam to extort attorneys' fees from unsuspecting businesses."  (Id. at 12.)  Savers submits evidence suggesting that LMFS also manages Mr. Kelly's and Ms. Shelton's lawsuits.

Though the allegations are serious, the court declines to impose sanctions at this time.  For the court to address Savers's allegations and make factual findings to support its sanctions, the court would need an evidentiary hearing.  Because the court has already determined that Mr. Burningham's claims should be dismissed, an evidentiary hearing would waste judicial resources.  However, the court hopes that the serious allegations levied by Savers and the multitude of complaints filed by Mr. Burningham cause the Utah State Bar to investigate the issue further.

## ORDER

For these reasons, the court GRANTS in part and DENIES in part Savers's Motion to Dismiss (ECF No. 5). The court ORDERS as follows:

(1)     Mr. Burningham's claim regarding Savers's under-sink piping is DISMISSED WITH PREJUDICE.

(2)     Mr. Burningham's accessible-parking claim is DISMISSED WITHOUT PREJUDICE. If Mr. Burningham believes he can allege, in good faith, that Savers owns, leases, or operates the parking lot, and that the signs in the parking lot are not compliant with the ADA, Mr. Burningham may file an amended complaint by November 3, 2017.

(3)     Savers's motion for sanctions is DENIED WITHOUT PREJUDICE.

Dated this 25th day of October, 2017

<div style="margin-left:50%">

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge

</div>